UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOHN R.,
    Plaintiff,

v.

FRANK BISIGNANO, *Commissioner,*
*Social Security Administration,*
    Defendant.

)
)
)
)
)
)
)
)
)
)
)

C.A. No. 25-565-JJM-AEM

**MEMORANDUM AND ORDER**

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Plaintiff John R. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking to reverse the decision of the Commissioner of the Social Security Administration ("the Commissioner"), in which he denied John's claim for Title XVI Supplemental Security Income ("SSI") benefits.  ECF No. 10.  In response, the Commissioner moves this Court to enter an order affirming his decision.  ECF No. 12.

After a thorough review of the record, and for the reasons stated below, the Court DENIES John's Motion to Reverse and GRANTS the Commissioner's Motion to Affirm.

I.    BACKGROUND

In October 2022, John applied concurrently for Social Security Disability Insurance benefits ("SSDI") and SSI alleging various disabilities, including back issues and potential neuropathy.[1]  ECF No. 10 at 2-3.  His SSI application was

---

[1] SSA regulations empower State agency medical consultants to make disability determinations.  *See* 20 C.F.R. § 416.913a(a); 20 C.F.R. § 416. 1015(c).  A

approved with an onset date of October 18, 2022.  *Id.*  His SSDI application, however,

was denied because the Commissioner found that John was not disabled as of his

Date Last Insured ("DLI") of June 30, 2022.[2]  John appealed the SSDI determination,

which was again denied on Reconsideration.  ECF No. 10 at 2.  John then requested

a hearing before an administrative law judge ("ALJ").  *Id.*  ALJ Paul Goodale also

determined that John was not disabled as of his DLI, finding that he had the residual

---

"state agency medical consultant" is a "member of a team that makes disability determinations in a State agency, or who is a member of a team that makes disability determinations for [the SSA]."  20 C.F.R. § 416. 1016(a).  This individual must be a license physician.  20 C.F.R. 416. 1016(b).

Although on his initial application John alleged Type 2 Diabetes, back issues, potential neuropathy, COPD, sleep apnea, depression, and anxiety, Tr. 247, the state agency medical consultant found John's medically determinable impairments to include lumbar spine degeneration with radiculopathy, osteoarthritis, peripheral neuropathy, tarsal tunnel syndrome, COPD, opiate dependence, diabetes, hypertension, and obesity.  Tr. 78-89.

The administrative law judge ("ALJ") assigned to review John's application later found at his hearing that John had "severe impairments" including "lumbar back disorder," "potential neuropathy," "depressive disorder," and "anxiety disorder." Tr. 25.  John does not articulate a challenge to the ALJ's evaluation of any mental impairments, thus this decision focuses only on issues and evidence pertaining to John's physical condition.

[2] To qualify for SSDI, John must have been disabled as of his Date Last Insured of June 30.  2022.  20 C.R.F. §§ 404.315(a)(1), 404.320(b)(2).  Initially, the presumed Date Last Insured ("DLI") was March 31, 2022.  ECF NO. 10 at 2.  John had enough reported income, however, to insure him through June 30, 2022, which is his actual DLI for the purposes of this action.  ECF No. 12 at 1.  As such, many of the reports in the record incorrectly considered whether John was disabled as of March 31, 2022 instead of June 30, 2022.

functional capacity (RFC)[3] to perform a significant number of medium work jobs.[4]  Tr. 27.  John appealed this decision to the Appeals Council, which denied John's request for review.  ECF No. 10 at 2.  John then initiated this action.  *Id.*

## II.    STANDARD OF REVIEW

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.*  (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Court "must uphold the Secretary's findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [their] conclusion."  *Rodriguez v. Sec'y of Health & Hum. Servs.*, 647 F.2d 218, 222-23 (1st Cir. 1981) (citing *Consol. Edison Co.*, 305 U.S. at 229).  If substantial evidence supports the Commissioner's decision, the Court should affirm it, "even if the record

---

[3] An "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *1 (SSA July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*  Additionally, an "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most.*"  *Id.* (emphasis in original); *see also* 20 C.F.R. § 416.945(a)(1).

[4] "Medium work" jobs are defined as jobs that involve "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighting up to 25 pounds."  20 C.F.R. § 404.1567(c).  John was previously a contractor and painter, which was work performed at a "medium" exertional level.  ECF No. 10 at 1.

arguably could justify a different conclusion . . . ." *Rodriguez Pagan v. Sec'y of Health & Hum. Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (citing *Lizotte v. Sec'y of Health & Hum. Servs.*, 654 F.2d 127, 128 (1st Cir. 1981)). That said, the ALJ's findings are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

As a final note, "[t]he First Circuit has stated that courts should ensure 'a just outcome' in Social Security disability claims." *Santa v. Astrue*, 924 F. Supp. 2d 386, 391-92 (D.R.I. 2013) (quoting *Pelletier v. Sec'y of Health, Educ. & Welfare*, 525 F.2d 158, 161 (1st Cir. 1975)). "[T]he Social Security Act is to be construed liberally to effectuate its general purpose of easing the insecurity of life." *Rodriguez v. Celebrezze*, 349 F.2d 494, 496 (1st Cir. 1965) (citing *Page v. Celebrezze*, 311 F.2d 757 (5th Cir. 1963)).

## III.   APPLICABLE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. §§ 416.905-11.

### A. The Five-Step Evaluation

In evaluating an initial disability claim, the ALJ must follow a five-step process. *See* 20 C.F.R. §§ 416.920(a)(4)(i)-(v).  The claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. *Sacilowski v. Saul*, 959 F.3d 431, 433, 440-41 (1st Cir. 2020).

Relevant here, at Step Three, the ALJ must determine whether the individual meets or medically equals the requirements of being disabled to qualify for benefits under the Social Security Act as of the DLI.  20 C.F.R. §§ 416.920(a)(4)(iii).  When making this inquiry, the ALJ may find that the disability date may have commenced before the medical record denoting the disability, and the ALJ may be able to infer that onset date[5] occurred before the DLI by making reasonable inferences from the medical record.  SSA POMS DI 25501.450(A)(1).  The onset date must be supported by the evidence and "consistent with the nature of impairments." *Id.*

When making their determination, the ALJ must examine the entire case record, including objective medical evidence, the individual's own statements, other information provided by medical sources and others, and any other relevant evidence in the individual's case record.   81 Fed. Reg. 14166, 14168-72.  In cases such as this where the medical record before the DLI is sparse, the ALJ "may consider the limited additional evidence in the record on his own." *Cheryl M. v. Bisignano*, C.A. No. 29-19-AEM, 2025 WL 3171185, at *4 (D.R.I. Nov. 13 2025), and in any analysis, the ALJ

---

[5] The established onset date ("EOD") is the date that an individual "meets the definition of disability and all the relevant entitlement or eligibility factors."  SSA POMS DI 25501.450.

may make "common-sense judgments about functional capacity." *Gordils v. Sec'y of Health & Hum. Servs.*, 921 F.2d 327, 329 (1st Cir. 1990).

The First Circuit has explained that particularly, "where contemporaneous medical evidence is lacking, post-DLI medical records may support a finding that the claimant's impairments were severe prior to [their] DLI, 'depending on the nature of the disability.'" *Fischer v. Colvin*, 831 F.3d 31, 36 (1st Cir. 2016) (quoting *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989)). The ALJ "should consider medical evidence from outside the coverage period if it sheds light on whether Plaintiff's impairments were severe prior to DLI, although, evidence dated outside that period may have less probative value, depending on the circumstances." *Toledo-Lopez v. Comm'r of Soc. Sec.*, No. CV 24-1019 (MEL), 2025 WL 339177, at \*7 (D.P.R. Jan. 30, 2025).

## B. Medical Opinions

Social Security Administration ("SSA") regulations require adjudicators to "evaluate the persuasiveness of medical opinions and prior administrative medical findings" pursuant to a series of factors. 20 C.F.R. § 404.1520c(a). When considering the medial opinions, "it is not administratively feasible" to provide an exhaustive analysis of each, and thus the ALJ must only address two factors in rendering his decision – supportability and consistency. *Id.* § 404.1520c(b)(1)-(2) (indicating that the ALJ "will explain" how he considered the supportability and consistency factors and "may, but [is] not required to" explain how he considered other factors); *Vanessa C. v. Kijakazi*, C.A. No. 20-363MSM, 2021 WL 3930347, at \*3 (D.R.I. Sept. 2, 2021), *report and recommendation adopted*, 2021 WL 8342850 (D.R.I. Nov. 2, 2021).

Although the ALJ may consider additional factors, they need only opine on those two. *Alvida L. v. Kijakazi*, 2023 U.S. Dist. LEXIS 63695, at \*7, 2023 WL 2910657 (D.R.I. Apr. 12, 2023).

Under those factors, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim," then "the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1)-(2). Although the act "does not articulate the depth with which the ALJ must describe 'supportability' and 'consistency' factors, an ALJ is still tasked with explaining how [he] considered them." *Katheryn H. v. King*, C.A. No. 24-cv-253-JJM-LDA, 2025 WL 521137, at \*4 (D.R.I. Feb. 18, 2025).

## IV.    DISCUSSION

Here, John argues that the ALJ erred when he determined that John was not disabled as of his DLI when John was found to have been disabled as of his SSI application filing just a little over three months later. ECF No. 10 at 2. John presents two main claims of error. First, he argues that the ALJ failed to consider certain objective medical evidence and thus the ALJ's decision is not supported by substantial evidence. *Id.* at 13. Second, John contends that the ALJ failed to properly evaluate the opinion evidence. *Id.* at 20.

7

### A. Objective Medical Evidence

John argues that the ALJ erred because he made no mention of certain substantial objective evidence, including John's x-ray,[6] MRI,[7] prescriptions,[8] referrals,[9] EMG,[10] and podiatric examination.[11]  *Id.* at 12-13.  Because the main issue is whether John was disabled as of his DLI, John's argument creates two relevant inquires: did the ALJ properly consider the medical evidence before the DLI as he was required to do, and was the ALJ required to consider any of the medical evidence in the record after the DLI?

Of all the evidence John argues the ALJ failed to consider, only the prescriptions for reported pain, the x-ray, and the MRI occurred *before* the DLI.  Tr. 327, 387, 789.  The rest of the evidence that John contends the ALJ failed to consider occurred *after* the DLI.  In fact, the bulk of the medical evidence on the record occurred after the DLI, spanning all the way into 2024.  And although John argues

---

[6] An x-ray conducted in March 2022 showed grade 1-2 L5-S1 spondylolisthesis with moderate instability in flexion and extension.  Tr. 387.

[7] An MRI conduced just before the DLI on June 21, 2022 showed grade 1 spondylolisthesis of L5 on S1, narrowing disk space with desiccation at L3-4, mild disc bulging at L3-4, a disc bulge with desiccation at L4-5, and an uncovering of the disc with bulging at L5-S1 with moderate bilateral foraminal stenosis.  Tr. 789.

[8] John refers to the prescriptions he was taking for reported pain.  ECF No. 10 at 13; *see also* Tr. 327.

[9] John refers to a referral made for an epidural steroid injection to his lumbar spine.  ECF No. 10 at 13.  The referral occurred on June 28, 2022, and the injection occurred on July 26, 2022.  Tr. 378, 381.

[10] An EMG was ordered on August 9, 2022 and the report noted evidence of chronic radiculopathy and mild to moderate bilateral tarsal tunnel syndrome.  Tr. 376, 379.

[11] John underwent a full podiatric examination in October 2022.  Tr. 372.

that the ALJ did not consider John's prescriptions, the x-ray, or his MRI—the medical evidence occurring before the DL—the record shows the opposite. The ALJ specifically inquired about John's MRI at the hearing, asking both when the MRI had taken place and about John's back condition at the time of the MRI. *Id.* at 56-58. The ALJ also mentioned John's prescription medication several times in his decision, noting that John had been "treated conservatively with medication" and that despite being previously prescribed suboxone, John reported that by 2022 he was off all pain meds and that at the time of the hearing he was only taking Tylenol. *Id.* at 28-29, 65-67. Although the ALJ did not specifically address John's 2022 x-ray in his decision, he did discuss the history of John's back pain and his treatment notes. *Id.* at 29.

As here, where the medical record before the DLI is sparse, the ALJ may consider the "limited additional evidence in the record on his own," *Cheryl M.*, WL 3171185, at *4, and in doing so, may make "common-sense judgments about functional capacity." *Gordils*, 921 F.2d at 329. The ALJ here did just that. He considered the objective medical evidence, including treatment notes dating to 2019, but also took into consideration John's own testimony, as well as the medical records nothing that John's exam results before the DLI were generally normal despite his complaints of worsening back pain. Tr. 29. In doing so, the ALJ found that the record did not show any impairments as of the DLI that "would result in debilitating limitations and preclude claimant from performing and all forms of work activities." *Id.* at 31. As such, the Court is unconvinced by John's argument that the ALJ did not

9

consider the objective medical evidence in the record before the DLI as he was required to do.  Furthermore, despite John's contentions, the ALJ was not required to opine on the medical evidence occurring after the DLI in his decision, particularly the exams and tests occurring several months or even years later to which John refers. *See Fischer*, 831 F.3d at 36.

Having determined that the ALJ did consider the objective medical evidence as he was required to do, the only remaining inquiry is whether there is substantial evidence to support the ALJ's determination.  The substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103 (quoting *Consol. Edison Co.*, 305 U.S. at 229).

During his review, the ALJ found that John's statements about his symptoms were inconsistent with the medical record. Tr. 28.  He explained that although John had a "history of degenerative disk disease and potential neuropathy," John reported feeling much better since his suboxone induction, and that despite his reports of "ongoing back pain," John was also working construction and building a deck just prior to his DLI. *Id.*at 29, 101.  Moreover, despite treatment notes on Jun 28, 2022 (just prior to his DLI) indicating that John was being referred for a cortisone injection, it was not until his appointment on August 9, 2022, that the treatment notes indicate that John was "very limited by his foot pain at [that] time." *Id.* at 378-79.  At that same June appointment, exam results continued to be benign and John's treatment notes indicated that the MRI revealed only "mild" to "moderate" narrowing of his L5-

10

21 resulting from his long-standing spondylolisthesis diagnosis, which the doctor noted was likely contributing to his lower leg and foot symptoms. *Id.* at 380-81. Thus, the Court finds there is sufficient evidence to support the ALJ's findings "[e]ven if the record arguably could justify a different conclusion." *Rodriquez Pagan*, 819 F.2d at 3.

### B. Opinion Evidence

In his second claim of error, John argues that the ALJ failed to correctly consider the opinion evidence of the two, state agency reviewing physicians, Dr. Kahayyal and Dr. Conklin; John's primary care physician, Dr. Van Hemelrijck; and John's podiatric surgeon, Dr. McCormick, DPM. ECF No. 10 at 20. John contends that the ALJ's analysis was flawed for several reasons, but primarily, he contends that the ALJ erred by failing to analyze the consistency and supportability of each opinion.[12] *Id.* at 21-26. John also takes issue with the period addressed in the physician's opinions. *Id.* As a result of the initial error in the presumed DLI, John's counsel instructed the physicians to focus their assessments on John's condition as it

---

[12] In a last point, John argues that the ALJ erred by misstating the opinion of one of the state agency physicians. ECF No. 10 at 23. Specifically, Dr. Khayyal opined that John could "occasionally" crouch and crawl while Dr. Conklin opined that John could "frequently" crouch and crawl. *Id.* at 8-9. The ALJ mistakenly stated in his decision that both physicians assessed that John could perform a range of "medium" work. Tr. at 30. Because medium work requires *frequent* crouching and crawling, John says this was a mischaracterization Dr. Conklin's assessment and thus an error. This, John contends, "is not a minor issue." *Id.* at 24. The Court disagrees. Even in the face of an error, a reviewing Court nevertheless may uphold an ALJ's decision "if the likely outcome on remand is clear and the same as that reached by the ALJ." *Heidi M. v. Berryhill*, C.A. No. 17-412PAS, 2018 WL 6788034, at *2 (D.R.I. Dec. 26, 2018). In such circumstances, the error is harmless and the ALJ's decision should be upheld. *Id.* Because other jobs supporting the ALJ's decision do not require any crouching or crawling, this error is harmless. *See* Tr. 27.

existed prior to March 31, 2022 instead of his actual DLI of June 30, 2022.   ECF No. 12 at 7.

To John's first point, the Court finds his argument unavailing.   The ALJ explained in his decision the persuasiveness that he assigned to each medical opinion. Tr. 30-31.  As to Dr. Khayyal and Dr. Conklin, the ALJ noted that their analyses were "consistent with the medical record that [John] could perform a range of medium work" but that their opinions where largely "unsupported" by the evidence obtained at the hearing level from which they formed their opinions.  *Id.*  The ALJ then opined on the persuasiveness of Dr. Van Hemelrijck and found that his opinion was "inconsistent" with the medical evidence in the record and "unsupported" by the doctor's "own objective findings on exam."  *Id.*  at 30-31.  Finally, the ALJ explained that Dr. McCormick's opinion was also "not consistent" with the medical evidence in the record and was further "unsupported" by his own statements and treatment notes.  *Id.* at 31.  Given that the ALJ commented specifically on the consistency and supportability of each medical opinion, the Court finds he did not err in his review. *See Martinez v. Kijakazi*, 2021 U.S. Dist. LEXIS 209759, at *39 (D. Mass. Oct. 29, 2021) (noting the "minimal level of articulation" required in the analysis of opinion evidence).

To John's second point regarding the gap between the opinion evidence and the DLI, the Court finds that there are sufficient treatment notes in the record to bridge the gap between what John's counsel originally presumed to be the DLI and the actual DLI.  Tr. 325 (primary care physician notes from June 2022 that John was

12

"doing well" and "very active" at work).  The ALJ was permitted to consider this additional evidence on his own when making his decision.  *See Cheryl M.*, 2025 WL 3171185, at *4.  And, in doing so, the ALJ determined that John was not disabled for the purposes of benefits prior to his DLI.  The Court cannot say that based on the record, his determination was not based on substantial evidence.

## V.    CONCLUSION

For the reasons stated, the Court DENIES John's Motion to Reverse (ECF No. 10) and GRANTS the Commissioner's Motion to Affirm (ECF No. 12).


IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court


June 22, 2026

13